## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN KELCH | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 15-6637 |
| | * | |
| SMITH MARITIME INC. | * | SECTION "L" (5) |

## ORDER & REASONS

Before the Court are cross-motions for partial summary judgment. Plaintiff filed a Motion seeking partial summary judgment, R. Doc. 60-1, on the issues of unseaworthiness, liability limitations, comparative fault, lack of standing, failure to mitigate, and third-party negligence. In their response, Defendants propose several stipulations resolving these issues but reserve their right to pursue actions against third parties for contribution and/or indemnity and oppose the portion of Plaintiff's Motion regarding their failure to mitigate defense. R. Doc. 71. Defendants have also filed a Motion for Partial Summary Judgment, R. Doc. 61-2, which Plaintiff opposes, R. Doc. 70. Defendants timely reply. R. Doc. 75.

## I.    BACKGROUND

This case arises out of injuries allegedly sustained by Dylan Kelch ("Kelch") on May 23, 2015, while he was employed by Defendant Callaway Barge Lines, Inc. ("Callaway") as a Jones Act seaman aboard the M/V ELSBETH III, a vessel owned or operated by Defendant Smith Maritime Inc. ("Smith"). R. Doc. 1 at 1. Plaintiff, Kathleen Kelch as Curator of Dylan Kelch, also brings this action against New York Marine and General Insurance Company and XL Specialty Insurance Company as they provided coverage to Defendants at the time of the incident. R. Doc. 1 at 2. Jurisdiction of this Court is invoked under 28 U.S.C. § 1331 and § 1333. R. Doc. 1 at 1.

Plaintiff claims Kelch suffered serious injuries while performing his duties as a deckhand on the M/V ELSBETH III, a steel-hulled towing vessel. R. Doc. 1 at 4. Plaintiff alleges the vessel

was attempting to pull the BARGE ELVIS[1] off the bank while located in navigable waters outside of Morgan City, Louisiana. R. Doc. 1 at 4. Plaintiff claims that the operator of the M/V ELSBETH III engaged the engine of the vessel without warning and a welded "d-ring" attached to the TUG ELVIS failed under pressure and came loose, striking Kelch in the head. R. Doc. 1 at 4.

Plaintiff alleges that Defendants were negligent in failing to provide a safe workplace, to ensure the appurtenances on the TUG ELVIS were properly welded, and to maintain the seaworthiness of both vessels involved in the accident. R. Doc. 1 at 4. Kelch incurred traumatic brain injury, facial and skull fractures, and spinal injuries, for which he has required continuous hospitalization since the date of the accident in May 2015. R. Doc. 1 at 4. Plaintiff seeks damages for Kelch's lost wages, pain and suffering, medical expenses, physical disability, and his need for constant assistance, as well as maintenance and cure benefits, punitive damages, attorneys' fees, and costs. R. Doc. 1 at 5.

Defendants answered and stated that Callaway was the "title owner" of the M/V ELSBETH III and Smith was the "pro hac vice" owner of the M/V ELSBETH III and the BARGE ELVIS. R. Doc. 7 at 2. Defendants initially denied Plaintiff's allegations and asserted a number of affirmative defenses, including that the vessels were seaworthy and that Kelch's injuries were not caused by Defendants' negligence. R. Doc. 7 at 4. Defendants also averred Plaintiff is not entitled to maintenance and any reasonable cure obligations had been satisfied. R. Doc. 7 at 5. Defendants initially invoked a limitation of liability defense, asserting the BARGE ELVIS, M/V ELSBETH III and M/V ELSBETH were valued at $4,475,000 at the time of the incident.[2] R. Doc. 7 at 7.

---

[1]     Plaintiff refers to both a "BARGE ELVIS" and a "TUG ELVIS" in the Complaint, but these references appear to be to a single vessel.  Defendants refer only to a "BARGE ELVIS" in their Answer, but they refer to both a M/V ELSBETH III and a M/V ELSBETH.

[2]     As discussed more fully below, the parties have reached stipulations addressing some of these claims and defenses.

## II.     PRESENT MOTIONS

### a.   Plaintiff's Motion for Partial Summary Judgment (R. Doc. 60-1)

Plaintiff seeks partial summary judgment on the following issues: unseaworthiness, limitation of liability, contributory or comparative fault, lack of standing or procedural capacity, failure to mitigate damages, and the negligence of Plaintiff or third parties. R. Doc. 60-1 at 1. However, Defendants have stipulated they will not contest the unseaworthiness of the vessels, have waived any allegations of Plaintiff's comparative or contributory fault, and will not assert any defenses related to lack of standing or limitation of ship owner's liability. See R. Doc. 92 at 1-2. Thus, it is only necessary to address Plaintiff's arguments regarding failure to mitigate and third-party negligence.

Plaintiff avers Defendants' allegations that Dylan Kelch failed to mitigate his damages are without merit. R. Doc. 60-1 at 14. Dylan Kelch has been hospitalized since the day of the accident, which Plaintiff argues is evidence he has not failed to mitigate damages. Thus, Plaintiff contends she is entitled to summary judgment that Kelch has not failed to mitigate his damages. R. Doc. 60-1 at 13-14.

Finally, Plaintiff seeks partial summary judgment that no third parties are liable for Kelch's injuries. Plaintiff avers that "all claims of third-party liability in this case have been effectively waived," as Defendants' original third-party action against Permaducto SA de CV Av. Periferica C/N has been dismissed. R. Doc. 60-1 at 14-15. Thus, Plaintiff argues, there is no evidence to support a finding of third-party liability and they are entitled to summary judgment on this issue. R. Doc. 60-1 at14-15.

b. **Defendants' Response (R. Doc. 71)**

Defendants begin by addressing the various stipulations they would propose in response to Plaintiff's Motion. However, these stipulations were recently entered into the record, and therefore it is unnecessary to review them at this time. See R. Doc. 92. In response to the remaining issues Plaintiff raises in her motion, Defendants reserve their rights to contest and litigate the extent of damages in this case including whether Kelch failed to mitigate his damages in any way. R. Doc. 71 at 3. According to Defendants, Plaintiff has not provided any evidence that would warrant dismissal of Defendant's failure to mitigate defense. R. Doc. 71 at 3. Defendants contend that Plaintiff's "conclusory allegations" and "unsubstantiated assertions" are insufficient to warrant summary judgment, thus this portion of the motion must be denied. R. Doc. 71 at 3.

Finally, Defendants address the issue of third-party negligence. R. Doc. 71. Defendants are willing to stipulate they are liable for Plaintiff's injuries, in order to avoid a "third, empty chair," during trial. R. Doc. 71 at 3. However, Defendants wish to reserve their right to pursue contribution actions against third parties in subsequent lawsuits. R. Doc. 71 at 4. Defendants aver that there are issues of material fact regarding whether Permaducto failed to properly weld the d-ring involved in this accident. R. Doc. 71 at 4. Thus, Defendants contend that this portion of Plaintiff's Motion should be denied. R. Doc. 71 at 4. The Defendant Insurers, New York Marine and XL do not dispute the facts in the Defendants' Response, but do not waive any rights, including the limits of liability, under the insurance policies at issue. R. Doc. 71 at 5.

c. **Defendants' Motion for Partial Summary Judgment (R. Doc. 61-2)**

Defendants filed a Motion for Partial Summary Judgment, arguing that they are entitled to summary judgment on Plaintiff's claims for maintenance, cure, and punitive damages. R. Doc. 61-2 at 1. In her response, Plaintiff stipulated that Kelch is not entitled to maintenance, and agreed to

dismiss all claims relating to maintenance payments. See R. Doc. 92 at 2. Further, Plaintiff has stipulated that as of November 23, 2016, Defendants have paid all medical bills "which have been presented for payment to Defendants," and "all reasonable and related medical bills to be presented to Defendants in the future will be satisfied by or on behalf of the Defendants." R. Doc. 92 at 2. While Plaintiff reserves the right to re-assert claims for cure payments in the future, it is not necessary to address these claims at this time. Thus, the only issue which remains in Defendants' motion is Plaintiff's claim for punitive damages.

Defendants argue their conduct was not arbitrary or capricious such that punitive damages are warranted in this case. R. Doc. 61-2 at 5. First, Defendants contend that Dylan Kelch's hospitalization eliminated the obligation for maintenance payments in this case. R. Doc. 61-2 at 5. Regarding cure payments, Defendants contend that Plaintiff admits they have been "extremely diligent" in paying cure obligations. R. Doc. 61-2 at 5. Additionally, Defendants aver they have provided the Kelch family with room, board, meals, and vehicles to use while Kelch has been hospitalized—expenses that are not required under Defendants' maintenance and cure obligations. R. Doc. 61-2 at 5. Thus, Defendants argue that their conduct has been far more generous than required under the law, and certainly not arbitrary and capricious as necessary to support an award of punitive damages. R. Doc. 61-2 at 5.

In the event that Plaintiff argues she is entitled to punitive damages because of Defendants' possible future behavior, Defendants argue that Plaintiff cannot recover based on speculations about future arbitrary conduct. R. Doc. 61-2 at 6 (citing *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 342 (5th Cir. 2012) (explaining that a promise to do something in this future is not actionable because it does not concern existing facts)). Further, Defendants contend that their maintenance and cure obligations end when the seaman reaches maximum medical improvement

("MMI"). R. Doc. 61-2 at 6 (citing *MNM Boats, Inc. v. Johnson*, 248 F.3d 1139, 1140 (5th Cir. 2001)). Defendants aver that "at least one doctor has opined that Dylan Kelch has reached maximum medical improvement." R. Doc. 61-2 at 6. Thus, Defendants argue it would not be arbitrary or capricious to terminate maintenance and cure in the event that Dylan Kelch did reach MMI in the future. R. Doc. 61-2 at 6.

  d. **Plaintiff's Opposition (R. Doc. 70)**

Plaintiff opposes Defendants' Motion in regards to punitive damages. R. Doc. 70 at 1. Plaintiff avers that Defendants have directed their billing coordinator, JR Hoyle and Associates, ("JR Hoyle") to handle all the bills in this case; however, some bills were erroneously sent to Dylan Kelch and subsequently placed in collection.[3] R. Doc. 70 at 1. Plaintiff contends that the fact the bills went into collections demonstrates Defendants handled their cure obligations in an arbitrary and capricious manner. R. Doc. 70 at 2. Further, Plaintiff notes that many of Dylan Kelch's medical bills were paid long after the date of service, and argues that this evidence raises question of material fact as to whether the bills were actually paid in a "reasonable time." R. Doc. 70 at 5. Plaintiff agrees that Defendants have time to "reasonably investigate the seaman's claim"—but here, "there is no doubt as to the connection between his treatment and the accident." Thus, Plaintiff avers that any delay in payment is unreasonable, as there is no need to determine whether the treatment is related to the accident. R. Doc. 70 at 5. Therefore, Plaintiff argues there are still issues of material fact regarding whether Defendants satisfied their cure obligations within a reasonable time, and whether Defendants acted in an arbitrary and capricious manner in making cure payments such that Plaintiff is entitled to punitive damages. R. Doc. 70 at 6-7.

---

[3]     Initially, Plaintiff disputed whether JR Hoyle had paid all the bills it had received related to Kelch's treatment. However, in the parties' most recent stipulation, R. Doc. 92, Plaintiff stipulates that Defendants have paid all the bills they have received up to this point, and agree to pay all reasonable bills they receive in the future.

e.  **Defendants' Reply (R. Doc. 75)**

In their reply, Defendants argue Plaintiff's statements regarding the billing issues in this case are disingenuous, and Plaintiff cannot possibly recover punitive damages based on the fact Defendants failed to pay bills they never received. R. Doc. 73-1 at 1. First, Defendants acknowledge that some providers have mistakenly sent bills directly to the Kelch's, despite repeated request to submit bills directly to JR Hoyle. R. Doc. 73-1 at 2. According to Defendants, when this occurs, Plaintiff's counsel provides these bills to JR Hoyle, who issues payment. R. Doc. 73-1 at 2. Additionally, Defendants explain the JR Hoyle has ensured these invoices were removed from collections, and will not impact Dylan Kelch's credit rating. R. Doc. 73-1 at 3.

Defendants acknowledge that some bills were paid a substantial time after services were rendered, but allege this delay is reasonable in light of the "complicated, extensive, and unique" process of paying medical bills.[4] R. Doc. 73-1 at 5. According to Defendants, it can take up to a month for providers to send an invoice to JR Hoyle, and another month to conduct an audit to ensure the services were actually rendered. R. Doc. 73-1 at 5. Defendants aver that this process is standard in the industry, and at all times, the providers are aware Defendants, not Dylan Kelch, are responsible for payment. R. Doc. 73-1 at 5. Thus, Defendants submit that the twelve delayed payments Plaintiff included in her motion do not demonstrate arbitrary or capricious behavior in light of the hundreds of medical payments made in this case. R. Doc. 73-1 at 7.

---

[4]    For example, in their briefs as well as during oral argument, the parties discussed billing issues related to a set of charges from American Medical Response. Plaintiff notes that there has been a substantial delay in issuing payment on these invoices. However, Defendants aver that they have been working to resolve these invoices, but the provider has not yet provided information to verify this treatment. R. Doc. 73-1 at 4. Specifically, American Medical Response sent bills for two round-trips between two hospitals on the same day. While they sent documentation to verify one of the round-trips, it is possible that the second trip was due to a duplicate bill. R. Doc. 73-1 at 4. Thus, Defendants argue, they are within their right to conduct a "reasonable investigation" into these invoices to ensure these services were actually rendered. R. Doc. 73-1 at 4.

Finally, Defendants contend that not only have they diligently met all of their cure obligations in this case, but they have also "gone above the requirements of the law to support the Kelch family" in this matter. R. Doc. 73-1 at 7. Defendants aver they paid Dylan Kelch his full salary for more than seven months after the accident, provided housing and utilities so the family could live closer to the hospitals where Dylan Kelch was being treated, paid for a rental car, provided a monthly stipend to the family, which they increased when Dylan Kelch's treatment was moved to Houston, and assisted the family in obtaining long-term disability benefits. R. Doc. 73-1 at 7-8. Thus, Defendants contend there is no question of material fact that they have fulfilled their obligations of maintenance and cure in a reasonable, and even generous manner, and Plaintiff's claims for punitive damages should be denied.

## III.   DISCUSSION

After reviewing the motions and relevant responses, the only remaining issues in Plaintiff's Motion for partial summary judgment are Defendants' failure to mitigate defense and negligence claims against third parties. R. Doc. 60-1. Further, Plaintiff agrees Dylan Kelch is not entitled to past maintenance, and has stipulated that Defendants have satisfied all cure obligations as of November 23, 2016. Thus, the only remaining issue in Defendant's Motion for partial summary judgment is Plaintiff's claim for punitive damages. The Court will discuss the applicable law, and then address each issue in turn.

### a.   Applicable Law

#### i.   Summary Judgment Standard

Summary judgment is appropriate when the record before a court supports the conclusion that there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A party moving for summary judgment bears the

initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *See id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, however, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

### b.  Discussion

#### i.  Plaintiff's Motion for Partial Summary Judgment

In Defendants' Response, they agreed to enter stipulations regarding four of the six issues Plaintiff raised in her motion. Thus, it is only necessary to address the parties' arguments regarding the affirmative defense of failure to mitigate damages and claims of negligence against third parties.

Dylan Kelch has been hospitalized since the day of his accident. He receives around-the-clock medical care, and his family has made every effort to ensure he reaches the best possible

medical outcome. There are absolutely no facts to suggest he has done anything to fail to mitigate his damages. Thus, Plaintiff's Motion is **GRANTED** with respect to Defendant's failure to mitigate defense.

Next, Plaintiff argues she is entitled to summary judgment that no third-party negligence contributed to Plaintiff's injuries. Defendants have stipulated they are liable for Plaintiff's injuries. This eliminates any claims in this action regarding third-party negligence. However, as Defendants stipulate, they reserve their right to seek contribution, indemnity, and other remedies from other entities in separate actions.[5] Thus, in light of Defendants' stipulation regarding liability, it is unnecessary to address claims against third parties in this matter. Therefore, Plaintiff's Motion as to third-party liability is **DISMISSED AS MOOT**.

Finally, in light of the stipulations reached by the parties, the portions of Plaintiff's motion relating to unseaworthiness, and the defenses of limitation of liability, lack of standing, and contributory negligence are **DISMISSED AS MOOT**.

### ii.  Defendants' Motion for Partial Summary Judgment

Defendants seek summary judgment on Plaintiff's claims for maintenance, cure, and punitive damages. Plaintiff entered a stipulation agreeing to dismiss her claim for maintenance, and stipulated that Defendants have paid every medical bill they have received as of November 23, 2016. While Plaintiff reserves her right to file a claim for cure payments if necessary in the future, the parties agree Defendants have satisfied all of their cure obligations up to this point. Thus, Defendants motion is **GRANTED** as it relates to their cure obligations. The portion of Defendants' motion related to Plaintiff's claims for maintenance is **DISMISSED AS MOOT.**

---

[5]     Additionally, the question of whether third parties contributed to Kelch's injuries necessarily involves questions of fact. The parties have not presented evidence to support or refute potential third party liability in this litigation; thus this issue cannot be resolved via summary judgment.

Finally, the Court must address Defendants motion for summary judgment on Plaintiff's claims for punitive damages. Plaintiff stipulated that Defendants have met all their maintenance and cure obligations up to this point. Further, the evidence demonstrates that the Defendants have exceeded their obligations in this case, and put forth significant efforts to support the Kelch family during this time. While Plaintiff argues that some of the delays in paying these bills were unreasonable, the Court finds that Defendants made payments within a reasonable time in light of the complex nature of medical billing and the volume of expenses in this particular case. Based on these facts, the Court finds that there is no genuine issue regarding whether Defendants have satisfied their maintenance and cure obligations in a reasonable manner. Thus, Plaintiff is not entitled to punitive damages and Defendant's Motion for partial summary judgment regarding punitive damages is **GRANTED**.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion, R. Doc. 60, is **GRANTED** with respect to Defendants' failure to mitigate defense. All other portions of Plaintiff's Motion are **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** Defendant's Motion, R. Doc. 61, is **GRANTED** with respect to Plaintiff's claims for punitive damages. All other portions of the Motion are **DISMISSED AS MOOT**.

New Orleans, Louisiana, this 29th day of November, 2016.

_____
UNITED STATES DISTRICT JUDGE